THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HOFFMANNN BROTHERS HEATING AND AIR CONDITIONING, INC. d/b/a HOFFMANNN BROTHERS<br><br>     Plaintiff,<br><br>  v.<br><br>NATIONAL LABOR RELATIONS BOARD, A FEDERAL ADMINISTRATIVE AGENCY; WILLIAM B. COWEN, IN HIS OFFICIAL CAPACITY AS THE GENERAL COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN, IN HIS OFFICIAL CAPACITY AS THE CHAIRMAN OF THE NATIONAL LABOR RELATIONS BOARD; DAVID M. PROUTY, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE NATIONAL LABOR RELATIONS BOARD; AND ANDREW GOLLIN, IN HIS OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE OF THE NATIONAL LABOR RELATIONS BOARD,<br><br>     Defendants. | Case No. 4:25-cv-01356<br><br>COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTION |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF HOFFMANN BROTHERS'
<u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

Plaintiff Hoffmann Brothers Heating and Air Conditioning, Inc. d/b/a Hoffmann Brothers ("Hoffmann Brothers") respectfully moves the Court, pursuant to Fed.R.Civ.P. 65, for a Temporary Restraining Order and Preliminary Injunction first to temporarily restrain and then preliminary enjoin unconstitutional administrative proceedings scheduled to begin on September 23, 2025 before a National Labor Relations Board ("NLRB" or the "Board") Administrative Law Judge ("ALJ") (the "Hearing").

After the NLRB issued the Complaint and Notice of Hearing ("Complaint") in NLRB Case

14-CA-344872 on May 30, 2025, Hoffmann Brothers attempted to resolve this matter without burdening the Court. It called the NLRB's attention to the fact that the policy allegedly at issue does not in any way infringe upon the Section 7 rights of employees, and further, that Hoffmann Brothers has revised the policy at issue making continued pursuit of the matter futile. Despite the underlying Charge containing allegations that both the confidentiality and non-solicitation provisions of Hoffmann Brothers' agreement violated Section 8(a)(1) of the Act, the NLRB only chose to issue a complaint addressing the confidentiality clause – the clause with a clear-cut exception allowing employees to discuss their terms and conditions of employment. Ignoring the evidence presented during its investigation, the NLRB has indicated it intends to proceed to hearing on September 23, 2025. Hoffmann Brothers must now seek Court intervention to prevent imminent unconstitutional administrative proceedings.

## I.     INTRODUCTION

Hoffmann Brothers filed this action to avoid serious and irreparable injuries it will otherwise suffer by being subjected to an unconstitutional administrative proceeding. Defendants are currently prosecuting and presiding over such a proceeding, accusing Hoffmann Brothers of violating federal law. Because the structure of the NLRB and the proceeding violates the United States Constitution under Supreme Court and Eighth Circuit precedent, Hoffmann Brothers respectfully requests an order halting the NLRB proceedings unless and until the constitutional defects are remedied.

"Preliminary injunctive relief is proper when a movant establishes: (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat.Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); see also, e.g., *St. Louis Effort*

for AIDS v. Huff, 782 F.3d 1016, 1021 (8th Cir. 2015). Hoffmann Brothers satisfies each of these elements and is likely to succeed in establishing that the structure of the NLRB proceedings violates the Constitution in at least two ways.

First, an ALJ is conducting an administrative proceeding against Hoffmann Brothers. In doing so, the ALJ is exercising substantial executive functions while being insulated from presidential control in violation of Article II of the Constitution. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). Indeed, three different layers of removal protections unconstitutionally impede the President's ability to remove the NLRB's ALJs: (1) while an agency (here the NLRB) may take steps to remove an ALJ, it may do so "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]," 5 U.S.C. § 7521(a); (2) the President may remove members of the MSPB only for "inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C.§ 1202(d); and (3) the President may remove NLRB board members only "for neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a). In *Jarkesy*, the Fifth Circuit held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). 34 F.4th at 463–64. Then in *SpaceX*, the Fifth Circuit definitively held that the Plaintiff had a likelihood of success of establishing that the insulation from removal that ALJs enjoy is unconstitutional. *Space Expl. Techs. Corp. v. NLRB*, Nos. 24-50627, 24-40533, 24-10855, 2025 U.S. App. LEXIS 21226, at *26 (5th Cir. Aug. 19, 2025). The same conclusion follows here.

Second, like the ALJs, the NLRB Members are also unconstitutionally insulated from removal. Article II requires the President to maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to only two exceptions. *Seila L. LLC v. CFPB*, 591 U.S. 197, 215, 238 (2020). The potentially relevant exception here – "for multimember expert

3

agencies that do *not* wield substantial executive power"– is inapplicable because the NLRB *does* wield substantial executive power. *Id.* at 218. As just one example, Section 10(j) of the National Labor Relations Act ("NLRA") gives Board Members "the power, upon issuance of [an administrative] complaint … charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court … for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). This "[p]etition power under § 10(j) is prosecutorial in nature" and thus a quintessential form of executive power. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010). The NLRB also has a distinctive structure from other federal agencies, whereby authority is divided between the Members and the General Counsel, who unlike the Members is a politically accountable officer. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022); *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 128–29 (1987).

Hoffmann Brothers will be irreparably harmed by these violations of its constitutional rights unless the Court halts the NLRB proceedings until this case proceeds to a final decision granting "relief sufficient to ensure that the [labor law] standards to which [Hoffmann Brothers is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010). Even if the Court remedies these structural defects in its final judgment, it cannot undo the injury Hoffmann Brothers will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted). The balance of equities and public interest weigh strongly in Hoffmann Brothers' favor for similar reasons.

Because Hoffmann Brothers satisfies the temporary restraining order and preliminary injunction factors, this Court should first grant Hoffmann Brothers' motion and temporarily restrain and then preliminarily enjoin the NLRB proceedings against it.

## II.     BACKGROUND

Hoffmann Brothers is a Missouri corporation, providing full-service commercial and residential air conditioning, heating, plumbing, and electrical contract work in the St. Louis, Missouri and Nashville, Tennessee metro areas (Dkt. 1, ¶ 29). On June 21, 2024, the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART") Local Union No. 36 (the " Union") filed an administrative unfair labor practice ("ULP") charge on behalf of Steven Brunk ("Charging Party") Case 14-CA-344872. (Dkt. 1, ¶ 36). Charging Party is a former Hoffmann Brothers employee. (Dkt. 1, ¶ 36). On August 16, 2024, Hoffmann Brothers submitted a position statement with supporting evidence that refuted Charging Party's allegations. (Dkt. 1, ¶ 38; Dkt. 1, Ex. A).

On May 30, 2025, the Regional Director for Region 14 of the NLRB issued an administrative complaint ("Complaint"). (Dkt. 1, ¶ 40; Dkt. 1, Ex. B). Hoffmann Brothers timely filed its Answer and Defenses to Complaint on June 13, 2025. (Dkt. 1, ¶ 42). On July 1, 2025 it filed its First Amended Answer and Defenses to Complaint, in which it asserted a variety of affirmative defenses challenging the constitutionality of the NLRB's structure. (Dkt. 1, ¶ 43; Dkt. 1, Ex. C).

Since that time, Hoffmann Brothers has attempted to resolve this matter with the NLRB. (Dkt. 1, ¶ 46). It has pointed out that the policy language allegedly at issue already contained an exception for the type of behavior the NLRB seeks to permit. (Dkt. 1, ¶ 38, 46). Specifically, it allowed for employees to discuss confidential information with anyone during their employment

5

("in the performance of my duties hereunder"). (Dkt. 1, ¶ 38; Dkt. 1, Ex. A). This carve out for discussion of terms and conditions of employment prevents any infringement on employees' Section 7 rights. Additionally, Hoffmann Brothers has shown the NLRB its revised policy, which it implemented in the interim, further addresses the NLRB's concerns which renders additional proceedings futile. (Dkt. 1, ¶ 46, 47). The revised policy contains even more explicit carveouts to remove any doubt employees may have as to whether this policy prevents them from discussing their terms and conditions of employment. (Dkt. 1, Ex. D). Namely, it spells out that the employee understands that "this Agreement does not prevent me from discussing my terms and conditions of employment with my coworkers." (Dkt. 1, Ex. D). Further, the Agreement in no way waives "the right to use Confidential Information in pursuit of an administrative complaint with the National Labor Relations Board or the Equal Employment Opportunity Commission." (Dkt. 1, Ex. D). Given the sufficiency of both of these policies, the continued litigation of this matter would be a waste of the NLRB's resources. Despite this, the NLRB has indicated it intends to proceed to hearing on September 23, 2025. (Dkt. 1, ¶ 44, 45).

### III.   ARGUMENT

"Preliminary injunctive relief is proper when a movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat.Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); see also, e.g., *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). Hoffmann Brothers satisfies each of these elements.

**A.   HOFFMANN BROTHERS IS LIKELY TO SUCCEED ON THE MERITS OF ITS CONSTITUTIONAL CLAIMS.**

   **1.   NLRB ALJs Are Unconstitutionally Insulated From Removal.**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020). The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id*. But because the executive responsibility remains vested in the President, the officers of every administrative agency – including "independent" ones – must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010). The Constitution thus requires the President to have the "power to remove – and thus supervise – those who wield executive power on his behalf." *Seila Law*, 140 S. Ct. at 2191.

The NLRB's ALJs – like the ALJs at the SEC – are "Officers of the United States" under the Constitution's Appointments Clause, not mere employees, because, among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). The Fifth Circuit held that SEC ALJs, which are virtually indistinguishable from NLRB ALJs in any relevant sense, are unconstitutionally insulated from removal. *Jarkesy v. SEC,* 34 F.4th 446, 465 (5th Cir. 2022), cert. granted, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 (2023), and cert. denied, 143 S. Ct. 2690, 216 L. Ed. 2d 1256 (2023), and aff'd and remanded, 144 S. Ct. 2117, 219 L. Ed. 2d 650 (2024).

The NLRB's ALJs do not merely perform adjudicatory functions such that the restrictions on the President's power to remove them are permissible. As the Fifth Circuit noted in *Jarkesy,* SEC ALJs, like NLRB ALJs, control the presentation and admission of evidence, punish contemptuous conduct, and issue final and binding decisions*. Id.* Thus, the Fifth Circuit held that

7

SEC ALJs exercised sufficient executive power such that the President must have the power to remove SEC ALJs based on the exercise of discretion granted to the ALJs. *Id.* at 465. The NLRB has previously acknowledged that its "judges, like SEC judges, are inferior officers[.]" *Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018). There is thus no legitimate basis to distinguish the NLRB's ALJs from those within the SEC framework.

In fact, on August 19, 2025, the Fifth Circuit applied the *Jarkesy* precedent directly to analogous NLRB proceedings and found the NLRB ALJs are unconstitutionally insulated from removal. *Space Expl. Techs. Corp. v. NLRB*, Nos. 24-50627, 24-40533, 24-10855, 2025 U.S. App. LEXIS 21226, at *26 (5th Cir. Aug. 19, 2025). In *SpaceX,* the Court held the same reasoning applies to NLRB ALJ's, highlighting that their powers, namely to sanction and to issue final decisions, are *more* consequential and robust than those of SEC ALJs. Moreover, the Supreme Court has noted that even where "the activities of administrative agencies take legislative and judicial forms, they are exercises of – indeed, under our constitutional structure they must be exercises of – the 'executive Power.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198, n.2 (2020) (internal quotations and citations omitted).

NLRB ALJs are only removable from office "for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, the President can only remove MSPB members for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This structure unconstitutionally interferes with the President's "constitutional obligation to ensure the faithful execution of the laws." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484 (2010).

Here, the NLRB's ALJs, who indisputably exercise substantial executive power, are "not accountable to the President, and [the] President … is not responsible for the" ALJs. *Id.* The

8

members of the MSPB, who may only be removed from office for cause, and therefore are only indirectly subject to the President's oversight, cannot hold the NLRB's ALJs fully accountable. Put differently, "the [MSPB] cannot remove [an ALJ] at will. The President therefore cannot hold the [MSPB members] fully accountable for the [NLRB ALJs'] conduct, to the same extent that he may hold the [MSPB members] accountable for everything else that" they do. *Id.* at 496. This structure violates Article II because it "not only protects [the inferior officers] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Id.* at 495. Under this binding precedent, Hoffmann Brothers is quite likely to prevail on the merits.

    **2.    The NLRB's Board Members Are Unconstitutionally Insulated From Removal.**

The removal protections of the NLRB's Board Members are unconstitutional as well. Unlike ALJs, the NLRB Board Members are principal officers who exercise substantial executive power in administering and enforcing the NLRA. Though they are appointed by the President and confirmed by the Senate, the President is deprived of his constitutional power to oversee their work. Specifically, the President can remove them only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

For principal officers, the Supreme Court has recognized only one potentially applicable, narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila Law*, 140 S. Ct. at 2199–200. This exception, which originated in *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935), is inapplicable here. In the Fifth Circuit recent *SpaceX* case that squarely addressed this issue, the Court explained that whether the narrow *Humprey's Executor* exception can apply requires an analysis of whether the officers have substantial executive power, how many structural hallmarks an agency shares with the FTC, and whether the for-cause removal, "combined with other independence-promoting mechanisms […]

9

work together to excessively insulate an agency from presidential control." *Space Expl. Techs. Corp. v. NLRB*, Nos. 24-50627, 24-40533, 24-10855, 2025 U.S. App. LEXIS 21226, at *29 (5th Cir. Aug. 19, 2025).

Whatever might have been true of FTC Commissioners in 1935, NLRB Board Members similarly exercise substantial executive power through their administrative, policymaking, and prosecutorial authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, examiners, regional directors, ALJs, and others. *Id.* § 154. Indeed, the Supreme Court recently noted that "[t]he Court's conclusion that the FTC did not exercise executive power has not withstood the test of time." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198, n.2 (2020). Moreover, it is "hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree." *Id.* (citation omitted).

Nowhere is the NLRB's executive power more clearly demonstrated than in Section 10(j) of the NLRA, 29 U.S.C. § 160(j). Section 10(j) gives the Board the quintessential executive power: to "petition [a] United States district court … for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. 29 U.S.C. § 160(j). Multiple courts agree that Section 10(j) power is prosecutorial, and thus executive, in nature. *See Muffley ex rel. NLRB. v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009) (ability to seek § 10(j) relief is "clearly prosecutorial"); *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]"); *Osthus v. Whitesell Corp.*, 639 F.3d 841, 848

10

(8th Cir. 2011) (Colloton, J., concurring) ("the power to seek an injunction is prosecutorial."). NLRB Board Members also have the "power to petition any court of appeals of the United States … for the enforcement of [the Board's] order and for appropriate temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(e).

The Supreme Court's recent decision in *Trump v. Wilcox*, points to a similar reasoning. 145 S. Ct. 1415, 1415 (2025). The Court stayed an injunction that barred President Trump from removing NLRB Board Members Gwynne Wilcox and Cathy Harris. *Id.* In doing so, it observed "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power." *Id.* While the Court did not decide the ultimate issue, the decision supports this reasoning. Furthermore, FTC Commissioners are removable "for inefficiency, neglect of duty, or malfeasance in office." *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Board Members, in contrast, are removably only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency. 29 U.S.C. § 153(a). Allowing Congress to eliminate the President's ability to remove principal officers who wield substantial executive powers for inefficiency would be an unjustified expansion of *Humphrey's Executor*. See *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)).

Just as the Supreme Court has declined to extend the *Humphrey's Executor* exception to agencies that are not a mirror image of the FTC, so should this Court. As demonstrated above, the NLRB indisputably *does* exercise substantial executive power. *Space Expl. Techs. Corp. v. NLRB*, 2025 U.S. App. LEXIS 21226, at *29. Thus, *Humphrey's Executor* has no bearing on the outcome here. Hoffmann Brothers is likely to succeed on the merits that NLRB Members' removal protections are unconstitutional.

11

## B. HOFFMANN BROTHERS WILL SUFFER IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Hoffmann Brothers will suffer irreparable harm by being forced to undergo an unconstitutional proceeding before an insufficiently accountable ALJ and NLRB. None of these constitutional harms are remediable after the fact – precisely because "being subjected to unconstitutional agency authority … by an unaccountable ALJ … is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903 (2023) (citation omitted); *Space Expl. Techs. Corp. v. NLRB*, 2025 U.S. App. LEXIS 21226, at *29.

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (citation omitted). Indeed, as the Supreme Court has stated, the harm is "impossible to remedy once the proceeding is over." *Axon,* 143 S. Ct. at 903. Thus, any potential appellate review will not cure the constitutional harms Hoffmann Brothers will endure absent injunctive relief. This is because judicial review of Hoffmann Brother's claims after the close of the Hearing would "come too late to be meaningful," because "[a] proceeding that has already happened cannot be undone." *Axon*, 143 S. Ct. at 904.

Having to proceed before an insufficiently accountable tribunal without a jury cannot be remedied after the proceeding has concluded. *Cf. Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (A flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance."). In sum, the reasoning of *Axon* directly supports temporarily enjoining the upcoming Hearing until a full adjudication of Hoffmann Brothers constitutional claims can occur.

Additionally, the real-world economic burdens of participating in the Hearing would also result in irreparable harm. If it is compelled to participate in the Hearing, Hoffmann Brothers will be forced to devote substantial time and resources to adequately prepare for and participate in the Hearing.

Because Hoffmann Brothers challenges the NLRB's structure and administrative proceedings on constitutional grounds on the front end, rather than after the conclusion of the proceedings, Axon is the appropriate standard to apply. Under *Axon*, the Ninth Circuit's decision in *Arevalo*, and the Fifth Circuit's reasoning in *SpaceX*, forcing Hoffmann Brothers to proceed before unconstitutionally insulated executive officers "is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903 (2023); *see also Energy Transfer, LP v. NLRB*, 3:24-CV-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024) ("the harm of being subject to a constitutionally defective adjudication, [is] sufficiently serious to justify pre-enforcement review in federal court."(citation omitted)).

As the Fifth Circuit noted, "the proceeding *is* the injury. The harm is not downstream from the process – it *is* the process." *Space Expl. Techs. Corp. v. NLRB*, 2025 U.S. App. LEXIS 21226, at *29. Simply put, each constitutional injury poses its own irreparable harm warranting injunctive relief.

C.  **THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.**

In circumstances where the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors weigh strongly in favor of Hoffmann Brothers. Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1,

13

12 (D.C. Cir. 2016). There likewise is "no public interest in the perpetuation of unlawful agency action." *E. Bay Sanctuary Covenant v. Biden*, 18-CV-06810-JST, 2023 WL 4943384, at *2 (N.D. Cal. Aug. 1, 2023) (citation omitted). It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499. Moreover, if the constitutional defects can ultimately be remedied, Defendants could then proceed with the Hearing. Thus, the balance of harms and the public interest clearly favors Hoffmann Brothers.

**D.     SEVERABILITY ARGUMENTS CANNOT DEFEAT HOFFMANN BROTHERS' RIGHT TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.**

The question of severability is relevant to the scope of the remedy at final judgment, not whether Hoffmann Brothers is entitled to preliminary relief pending the Court's final decision. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006) (describing severability as "a question of remedy"). In fact, courts may issue a preliminary injunction to preserve a party's rights even if the ultimate relief they could receive differs from the requested preliminary injunctive relief. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (noting that a party seeking only declaratory relief was still entitled to a preliminary injunction because "prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). Ultimately, the possibility of severance at final judgment neither undermines Hoffmann Brothers' likelihood of success on the merits, nor its irreparable harm in the interim.

As to likelihood of success, the severability of an unconstitutional provision would not mean that Hoffmann Brothers' claim fails. Just the opposite: Hoffmann Brothers seeks declaratory

relief as well as injunctive relief. For example, in *Free Enterprise Fund*, the Supreme Court severed an unconstitutional removal protection, but still ruled in the challengers' favor: even though the challengers were "not entitled to broad injunctive relief against the [PCAOB's] continued operations," they were still "entitled to declaratory relief sufficient to ensure that the [legal] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." 561 U.S. at 513.

As to irreparable harm, the Supreme Court recently reiterated that a "here-and now injury" exists when a party is subject to an unconstitutional administrative proceeding. *Axon*, 143 S. Ct. at 903. Without a stay or other postponement of the Hearing, much of that proceeding will have occurred by the time the Court issues a final decision on the merits of Hoffmann Brothers' claims. At that point, a declaratory remedy would no longer be able to repair the unconstitutional harm Hoffmann Brothers experienced.

More generally, the availability of preliminary injunctive relief should not turn on the possibility of severing unconstitutional provisions here. Even if the President could remove MSPB members without cause, and even if the NLRB could remove its ALJs without cause, such ALJs would still not be accountable to the President. This three-layered removal protection scheme distinguishes this case from *Decker Coal Company v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021). There, the ALJs at issue were protected by for-cause removal provisions, but the ALJs made decisions subject to vacatur by members of the Benefits Review Board ("BRB"). *Id.* at 1135. The members of the BRB were removable at will by the Secretary of Labor, who was also removable at will by the President. Id. Thus, as the Ninth Circuit explained, "the BRB has ample control over DOL ALJs and the President, in turn, has direct control over BRB members through the Secretary

of Labor." Id. Because of those stark differences between the BRB and the NLRB, Decker Coal is inapplicable to Hoffmann Brothers' claims here.

Deciding now to sever one, two, or three of these deliberately adopted provisions risks "circumvent[ing] the intent of the legislature," *Ayotte*, 546 U.S. at 330, and violating the "obligation to avoid judicial legislation," *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 479 (1995). Severability should be addressed at a later stage and/or in a different branch. In the meantime, the Court should protect Hoffmann Brothers' right to avoid being forced to participate in unconstitutional administrative proceedings by granting Hoffmann Brothers the injunctive and declaratory relief it seeks.

## IV.  CONCLUSION

For the foregoing reasons, the Court should first enter a temporary restraining order staying the Hearing until the important constitutional issues can be fully litigated, which should be followed by a preliminary injunction enjoining the NLRB. Relatedly, Hoffmann Brothers requests that the Court issue an Order setting the relevant deadlines and hearing schedule to resolve these issues.

RESPECTFULLY SUBMITTED this 10th day of September 2025.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Burton D. Garland, Jr.
Burton D. Garland, Jr.
Alexandra K. Hunstein
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
burton.garland@ogletreedeakins.com
alex.hunstein@ogletreedeakins.com
(314) 802-3953

*Attorneys for Plaintiff Hoffmann Brothers*

Case: 4:25-cv-01356-SRC   Doc. #:  3-1    Filed: 09/10/25   Page: 17 of 17 PageID #: 95

92438485.v1-OGLETREE