**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| HOFFMANN BROTHERS HEATING AND AIR CONDITIONING, INC.<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD, *et al.*,<br><br>Defendants. | Case No. 4:25-cv-01356-SRC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiff Hoffmann Brothers Heating and Air Conditioning, Inc. d/b/a Hoffmann Brothers, is not entitled to a temporary restraining order (TRO) halting the congressionally mandated procedure for resolving labor disputes. Such relief is barred by the Norris-LaGuardia Act (NLGA), 29 U.S.C. § 101 *et seq*. Moreover, Hoffmann Brothers has failed to demonstrate that the longstanding laws it challenges have caused (or will cause) it any harm whatsoever, much less great irreparable harm. And, as other courts have determined in similar circumstances, Hoffmann Brothers' unexplained delay in seeking a TRO is reason enough to deny relief.

## FACTS

**Statutory and Regulatory Background**

Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169, establishes that employees have the right to engage in "concerted activities for the purpose of collective-bargaining or other mutual aid and protection[.]" 29 U.S.C. § 157. The National Labor

1

Relations Board (NLRB)[1] processes allegations that an employer or union committed an unfair labor practice (ULP) in violation of these Section 7 rights. One such ULP is an employer's maintenance of rules or agreements that restrict employees from exercising their right to discuss their terms and conditions of employment. *See McLaren Macomb*, 372 NLRB No. 58 (2023), *enforced per curiam*, No. 23-1335, 2024 WL 4240545 (6th Cir. Sept. 19, 2024).

To process ULP allegations, the NLRB employs administrative law judges (ALJs) as initial adjudicators. ALJs are appointed in accordance with the Civil Service Reform Act, 5 U.S.C. § 3105, and the NLRA. 29 U.S.C. § 154(a); *WestRock Services, Inc.*, 366 NLRB No. 157, slip op. at 3 (2018). An ALJ's "proposed report, together with a recommended order," are reviewed by the NLRB's five-seat Board on any party's request. 29 U.S.C. § 160(c).

Removal of ALJs and Board members is defined by statute. With a handful of exceptions, 5 U.S.C. § 7521(a) states that "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board [MSPB] on the record after opportunity for hearing before the [MSPB]." Under this formulation, removing an ALJ requires two steps: (1) the NLRB's Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. Section 3(a) of the NLRA states that Board members "may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). A statute also restricts the removal of MSPB members. 5 U.S.C. § 1202(d) ("Any member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").[2]

---

[1] References to "the NLRB" are to the agency as a whole; references to "the Board" are to the five-member body serving as head of the agency.

[2] The NLRB is not defending the constitutionality of the tenure provisions at issue here.

Board orders are not self-enforcing. Section 10(e) of the NLRA, 29 U.S.C. § 160(e), provides that the Board must seek enforcement of its orders from an appropriate court of appeals to become effective against a respondent. *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. 29 U.S.C. § 160(f). District courts generally lack jurisdiction over matters arising under this statutory review scheme. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938), *cited in Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

**Procedural History**

This case arises from a ULP charge filed by the International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local Union No. 36 (Union) against Hoffmann Brothers, an HVAC, plumbing, and electrical contractor. Compl. ¶¶ 29, 36-37 (Dkt. No. 1). On May 20, 2025, the Acting Regional Director for NLRB Region 14 issued a Complaint and Notice of Hearing (ULP Complaint) against Hoffmann Brothers. Compl. Ex. B (Dkt. No. 2-1). It alleged that Hoffmann Brothers has maintained a non-compete/confidentiality agreement that "has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act[,] in violation of Section 8(a)(1) of the [NLRA]." *Id.* at 3. It also notified Hoffmann Brothers that a hearing would be held before an NLRB ALJ on September 23, 2025. *Id.* at 4. Hoffmann Brothers filed its first answer to the ULP Complaint on June 13, 2025 (attached as Ex. A). There, it asserted that "[t]he Board's issuance of this Complaint and proceeding to seek redress of the allegations set forth against Respondent are in violation of the United States Constitution." Ex. A at 5. Its amended answer repeated this claim. Compl. Ex. C at 5 (Dkt. No. 2-2). On September 15, 2025, Region 14 issued an amendment to the complaint,

3

alleging that Hoffmann Brothers' revised non-compete/confidentiality agreement still violates the NLRA (attached as Ex. B).

Separately, on January 27, 2025, President Trump removed Gwynne A. Wilcox from her position as a Board Member without specifying a "qualifying cause." *Trump v. Wilcox,* 145 S. Ct. 1415, 1415 (2025). Wilcox then sued, challenging her removal in D.C. district court. On March 6, the district court granted Wilcox summary judgment and ordered reinstatement. *Wilcox v. Trump*, 775 F. Supp. 3d 215, 240–41 (D.D.C. 2025) (hereinafter, "*Wilcox* Injunction Order"), *appeal docketed*, No. 25-5057 (D.C. Cir. argued May 16, 2025). But on May 22, the Supreme Court stayed the *Wilcox* Injunction Order pending the disposition of the government's appeal to the D.C. Circuit and the disposition of a petition for a writ of certiorari, if such a writ is timely sought. *Trump v. Wilcox,* 145 S. Ct. at 1415.

## **LEGAL STANDARD**

A motion for a TRO is judged by the same standards as a motion for a preliminary injunction. *SH3 Health Consulting, LLC v. Page*, 459 F. Supp. 3d 1212, 1219 (E.D. Mo. 2020). A preliminary injunction is "an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A petitioner must make "a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). When deciding whether to grant such relief, the Court weighs four factors: "(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981). The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435

4

(2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (*per curiam*) (equities and public interest may overcome other two factors in constitutional cases).

While no single factor is determinative, the likelihood of success on the merits is most important. *See, e.g., Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020). However, "[a] party seeking a preliminary injunction bears the burden of satisfying [all] four *Dataphase* factors." *Adventist Health Sys./SunBelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 800–801 (8th Cir. 2021) (cleaned up).

## ARGUMENT

I. **Hoffmann Brothers is unlikely to succeed on the merits.**

    A. <u>The NLGA jurisdictionally bars injunctive relief in labor-dispute cases except where authorized by law; Hoffmann Brothers' request is not so authorized</u>.

The NLGA jurisdictionally bars all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of a labor dispute," with few exceptions. 29 U.S.C. § 107; *see Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970); *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990) (Congress "severely restricted" jurisdiction of federal courts to issue injunctions involving "any labor dispute") (cleaned up). As two district courts have recently concluded, the NLGA applies to efforts to enjoin ULP cases on the grounds advanced by Hoffmann Brothers. *See Amazon.com Servs. LLC v. NLRB*, No. 2:24-cv-09564, 2025 WL 466262, at *3–5 (C.D. Cal. Feb. 5, 2025), *appeal docketed*, No. 25-886 (9th Cir. argued Aug. 14, 2025); *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-CV-02577 (TNM), 2024 WL 4817175, at *4–7 (D.D.C. Nov. 17, 2024), *appeal docketed*, No. 25-5006 (D.C. Cir. Jan. 22, 2025).

This case unmistakably "grows out of" a labor dispute, a statutory term which includes "any controversy concerning terms or conditions of employment . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c).

5

"A case shall be held to involve or to grow out of a labor dispute when the case involves persons . . . who are employees of the same employer; or who are members of the same [union]; whether such dispute is (1) between one or more employers or . . . and one or more employees or [unions]." 29 U.S.C. § 113(a). As explained (*see* above at 3), this case "involves" Hoffmann Brothers' alleged maintenance of a non-compete/confidentiality requirement as a term or condition of employment that restricts its employees from exercising their Section 7 rights. This falls comfortably within the category of activities Congress expressly protected in the NLGA, as "'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712–13 (1982).

Importantly, a lawsuit need not *constitute* a labor dispute to involve or grow out of one for the purposes of the NLGA. *See United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979).[3] In *Bishop*, for example, the court held that the NLGA prohibited an injunction in a customer's replevin action requiring a strikebound steel fabricating plant to return steel to the customer. *Id.* at 410. "The injunction . . . did not directly address or enjoin union activity," nor did it even "mention the strike" at the plant. *Id.* at 415. Even so, the Court found that the NLGA applied because of "the effect of an injunction on the labor dispute." *Id.* By relieving the fabricating plant of the risk of a potential suit by the customer, the replevin injunction functionally "disarm[ed] the [u]nion . . . and altered the bargaining stance" between the employer and the union. Thus, in *Bishop*, "[t]he fact that the labor dispute was between the employer . . . and its employees' [u]nion," while the case before the district court involved the employer and

---

[3] Hoffmann Brothers claims that the NLGA "is inapplicable because this lawsuit falls outside the statutory definition of 'labor dispute.'" Compl. ¶ 25 (quoting *Space Expl. Techs. Corp. v. NLRB*, --- F.4th ---, No. 24-10855, 2025 WL 2396748, at *16 (5th Cir. Aug. 19, 2025) (*SpaceX*)). That misses the point. This lawsuit unmistakably "grow[s] out of a labor dispute" even if the lawsuit is not itself a labor dispute. 29 U.S.C. § 107.

6

its customer, did not and "cannot control" for NLGA purposes. *Id.* at 414.

The same is true here. It is of no import that Hoffmann Brothers' quarrel is nominally with the government and its procedures rather than an employee or union. The NLGA may not be construed so narrowly. "Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the [NLGA]." *Jacksonville Bulk Terminals*, 457 U.S at 712 (quoting *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960)). That Hoffmann Brothers raises constitutional claims is of no moment, for the "broad language of the NLGA encompass[es] such claims because the claims 'would not exist but for the underlying Board charges.'" *Amazon.com*, 2025 WL 466262, at *4 (quoting *VHS*, 2024 WL 4817175, at *5, and *Armco, Inc. v. United Steelworkers*, 280 F.3d 669, 680 (6th Cir. 2002)). This is true even when constitutional claims are asserted against government defendants. *See Armco*, 280 F.3d at 675–76.

Once this Court concludes that this case involves or grows out of a labor dispute, the unavailability of injunctive relief is inexorable. The NLGA flatly strips federal courts of jurisdiction to issue any "restraining order or temporary or permanent injunction . . . contrary to the public policy declared in this chapter." 29 U.S.C. § 101.

B. <u>Hoffmann Brothers' removal claims do not support injunctive relief.</u>

1. *Failure to allege causal harm is fatal to its removal claims.*

Hoffmann Brothers challenges the constitutionality of the statutory removal restrictions that apply to NLRB Board members, 29 U.S.C. § 153(a), and administrative law judges, 5 U.S.C. § 7521(a). Mot. at 6–11. The NLRB does not and need not defend the constitutionality of these restrictions. *See* above at 2 n.2. Rather, Hoffmann Brothers' claims fail because it cannot show that it was *harmed* by an officer serving under an unconstitutional removal provision. *See YAPP*

7

*USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2–3 (6th Cir. Oct. 13, 2024) (challenger not entitled to injunctive relief regardless of constitutionality of removal protections if the protections caused no harm), *emergency application for writ of injunction denied*, No. 24A348, 2024 WL 4508993, at *1 (U.S. Oct. 15, 2024) (Kavanaugh, J.).

An unlawful removal restriction does not deprive properly appointed officers of "the authority to carry out the functions of the[ir] office[s]." *Collins v. Yellen*, 594 U.S. 220, 258 (2021). So long as they are validly appointed, officials are not exercising power that they do "not lawfully possess." *Id.*; *see also id. at* 67 (Thomas, J., concurring) ("The mere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated."). Thus, to state a claim that the removal provisions applicable to NLRB ALJs and Board members are unconstitutional, Hoffmann Brothers must show that the allegedly unlawful removal restrictions actually "cause[d] harm" to it. *Id.* at 260.

*Collins*, the leading case on this matter, posited two hypotheticals that could potentially demonstrate that the removal provisions "inflict[ed] compensable harm" and provide a basis for a court to grant relief: (1) if the President "had attempted to remove [an agency official] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; or (2) if the President "had made a public statement expressing displeasure with actions taken by [an agency official] and asserted that he would remove [the official] if the statute did not stand in the way." *Id.* at 259–60; *see Calcutt v. FDIC*, 37 F.4th 293, 316–17 (6th Cir. 2022) (rejecting reliance on "vague, generalized allegations" like the mere "*possibility* that [agency officials] would have taken different actions" without removal protections), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023).

Neither *Collins* hypothetical is satisfied here. By virtue of the Supreme Court's stay of

8

the *Wilcox* Injunction Order (*see* above at 4), Hoffmann Brothers cannot satisfy the first hypothetical because former Member Wilcox's removal has not been prevented. *See Trump v. Wilcox*, 145 S. Ct. at 1415. Nor does Hoffmann Brothers allege that the Board or the President have publicly expressed a frustrated desire to remove any NLRB ALJ.

Moreover, the Eighth Circuit has confirmed that to meet the causal-harm requirement under *Collins*, the plaintiff must "plausibly allege that the inability to remove [an officer] frustrated the administration's goals" with respect to a specific issue. *Bhatti v. Fed. Housing Fin. Agency*, 97 F.4th 556, 556 (8th Cir. 2024). In *Bhatti*, the Court of Appeals concluded that shareholders of Fannie Mae and Freddie Mac "did not plausibly plead" that they were harmed by the removal restrictions surrounding the FHFA's Director. *Id.* at 561. The Eighth Circuit clarified that any claim to harm "must be connected in some way, or share some nexus with, the president's inability to remove" the unconstitutionally protected officer. *Id.* Seven other circuit courts have similarly refused to grant relief based on assertedly unconstitutional removal restrictions in the absence of an affirmative showing of causation. *See CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2025); *NLRB v. Starbucks Corp.*, 125 F.4th 78, 88–89 (3d Cir. 2024); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Calcutt*, 37 F.4th at 318–20; *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132–36 (9th Cir. 2021); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757–58 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1047 (2025); *Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315 (11th Cir. 2024).

Hoffmann Brothers ignores its obligations under *Collins*'s causal-harm rubric and therefore forfeits any argument that causal harm exists here. Rather, it relies on the Fifth Circuit's recent decision in *SpaceX* for the proposition that having to participate in the ALJ

9

hearing is a here-and-now injury that requires no additional showing of harm. *See* Mot. at 12–13.

*SpaceX* is not binding on this Court and was wrongly decided.[4] There, a divided panel upheld preliminary injunctions of NLRB proceedings based on the plaintiffs' removal challenges. As the dissenting judge pointed out, the panel majority erroneously concluded that these injunctions were appropriate even though the plaintiffs had not identified any concrete, compensable harm caused by the challenged statutory removal restrictions. *Id.* at *15–18 (Wiener, J., dissenting in part). The *SpaceX* majority says this is because *Collins* does not apply to prospective relief, but every other circuit court to have addressed the issue disagrees. *See Leachco*, 103 F.4th at 757 (affirming denial of preliminary injunction); *YAPP*, 2024 WL 4489598, at *3 (denying injunction pending appeal); *Crystal Moroney*, 63 F.4th at 180–81.

    2.  *A temporary restraining order is improper where severance is available.*

Hoffmann Brothers' removal claims do not entitle it to a temporary restraining order. Instead, the proper remedy (if any) on those claims would be to sever the offending statutory language. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress," so long as the remainder of the law can still function and remain operative. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625, 627 (2020). Board member and ALJ removal restrictions are readily severable, particularly given the NLRA's explicit severability provision, 29 U.S.C. § 166, and the Supreme Court's practice of using that remedy in similar circumstances, *see Collins*, 594 U.S. at 257–60; *Seila L. LLC* v. *CFPB,* 591 U.S. 197, 232–38 (2020); *Free Enter. Fund v. Pub, Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010); *see also Walmart, Inc. v. Chief Admin. L. Judge*, 144 F.4th 1315, 1348–49 (11th Cir.

---

[4] The time for the NLRB to seek further review in *SpaceX* has not expired.

10

2025) (declaring statute restricting removal of ALJs to be "easily severable").[5]

The Fifth Circuit's *SpaceX* decision incorrectly granted the plaintiffs preliminary injunctive relief without meaningfully addressing severance. 2025 WL 2396748, at *7. But law and logic command that when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974). And because the most Hoffmann Brothers could obtain at final judgment is severance, it is not entitled to *greater* relief—an injunction—at this interim stage. *See Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) (grant of intermediate relief appropriate where that relief is "of the same character as that which may be granted finally") (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).[6]

II.   **Hoffmann Brothers has failed to establish that it will experience any irreparable harm, let alone the "great" irreparable harm required for a preliminary injunction.**

   A.   <u>A bare allegation of a constitutional violation does not establish irreparable harm; Hoffmann Brothers pleads no additional facts to establish such harm.</u>

The Supreme Court has repeatedly stated that the "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Hoffmann Brothers has failed to establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 462 (8th Cir. 2025) (quoting *Winter*, 555 U.S. at 20).

---

[5] It is not necessary for this Court to decide now precisely how severance would operate at final judgment to deny the present motion.

[6] *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), is not to the contrary. *See* Mot. at 14. That case does not discuss severance. Moreover, in *Doran*, the movants were likely to "suffer a substantial loss of business and perhaps even bankruptcy" such that "a favorable final [declaratory] judgment might well be useless." 422 U.S. at 932. Hoffmann Brothers makes no such showing.

For purposes of a TRO, Hoffmann Brothers cannot establish irreparable harm based solely on the fact that its claims are constitutional in nature. *See* Mot. at 12–13.[7] The Eighth Circuit has made clear that "the assertion of a possible constitutional violation does not release plaintiffs from their burden of showing that irreparable harm is more than just a 'mere possibility.'" *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1017 (8th Cir. 2023). And other courts have been hesitant to apply any such presumption broadly. *See Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) (en banc) (presumption only applies to cases involving "the right of privacy and certain First Amendment claims [.]"); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (presumption "almost entirely restricted to cases involved alleged infringement of free speech, association, privacy or other [similar] rights"); *cf. Alpine Sec. Corp. v. FINRA*, 121 F. 4th 1314, 1333-34 (D.C. Cir. 2024) ("[P]articipating in a proceeding before[] an unconstitutionally appointed officer is not, without more, an injury that necessitates preliminary injunctive relief.").[8]

Hoffmann Brothers' core claim is that *Axon* makes proof of irreparable harm unnecessary where challengers can allege constitutional injury from an improper removal protection. *See* Mot. at 4, 12–13, 15. Judge Schelp of this Court rejected this very argument in *Express Scripts, Inc. v. FTC*, No. 4:24-cv-01549-MTS, 2025 WL 521812 (E.D. Mo. Feb. 18, 2025), *appeal docketed*, No. 25-1383 (8th Cir. Feb. 24, 2025). There, as here, the movant sought to

---

[7] Hoffmann Brothers mentions the costs of preparing for the ULP hearing. Mot. at 13. It is well-settled law that "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

[8] Hoffmann Brothers' cited authority to the contrary, Mot. at 12, dealt with "[d]eprivation of physical liberty by detention," which is of far greater severity than being subject to an administrative hearing. *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018).

12

preliminarily enjoin an administrative proceeding based on removal protections for agency officers. *Id.* at *1. There, as here, the agency did not defend the constitutionality of the protections. *Id.* at *4 n.3. In denying the injunction, Judge Schelp observed that *Axon* "did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction." *Id.* at *8 (quoting *Alpine*, 121 F. 4th at 1336). Indeed, "*Axon*'s language describing the injury may get Plaintiffs to irreparable harm, but it does not get them to *great* irreparable harm," which is required in this posture. *Id.* This level of harm means that it is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* at *7 (quoting *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024)).

Notably, the Eighth Circuit summarily denied a motion for injunction pending appeal in *Express Scripts*. *See* Order, No. 25-1383 (8th Cir. Mar. 20, 2025) (Doc. No. 5498208) (attached as Ex. C). It has also summarily denied an injunction pending appeal in another removal-protection case where a party has claimed that an *Axon*-based injury suffices to show irreparable harm without more. *H&R Block, Inc. v. Himes*, No. 24-2626, 2024 WL 4678003 (8th Cir. Sept. 13, 2024), *reconsideration en banc denied*, 2024 WL 4677442 (8th Cir. Oct. 15, 2024).

To be sure, an *Axon* claim states a "here-and-now injury" that gets a plaintiff through the courthouse door. *See Leachco*, 103 F.4th at 759 (*Axon* is "about jurisdiction"). But as the Supreme Court made clear in *Collins*, "[w]hat we said about standing in *Seila Law*"—from which *Axon* borrowed the concept of a here-and-now injury—"should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." 594 U.S. at 259 n.24; *see also Axon*, 598 U.S. at 191. For this reason, *SpaceX* was wrong to equate "*Axon*'s injury" with irreparable harm for the purposes of an injunction. 2025 WL 2396748, at *16. Even assuming for the sake of argument that a here-and-now injury may at times overlap

13

with the concept of irreparable harm, Hoffmann Brothers certainly did not establish "certain and great" irreparable harm stemming from the upcoming administrative hearing, as shown by its utter failure to show or even allege causal harm under *Collins*.

      B.      <u>Hoffmann Brothers' unjustified delay in seeking injunctive relief undercuts its claim of irreparable harm.</u>

"[A]n unreasonable delay in moving for [an] injunction can undermine a showing of irreparable harm and 'is a sufficient ground to deny a preliminary injunction.'" *Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (quoting *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019)). Here, the ULP Complaint in the NLRB proceeding issued almost four months ago. And as discussed (*see* above at 3), Hoffmann Brothers raised constitutional defenses as early as June 13, 2025. It is unclear why the subsequent issuance of *SpaceX*—which is not binding on this Court—would excuse Hoffmann Brothers for not seeking injunctive relief soon after the ULP Complaint issued, let alone less than two weeks before the hearing was set to begin. Other district courts have recently denied injunctive relief in similar circumstances. *See Import Motors II, Inc. v. Cowen*, No. 3:25-cv-07284-RFL, 2025 WL 2589046, at *4 (N.D. Cal. Sept. 8, 2025) (faulting plaintiff for waiting seven months before commencing action); *Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) ("[T]he timing of this TRO Motion undermines Plaintiffs' irreparable harm argument."); *HonorHealth v. NLRB*, No. CV-24-03009-PHX-DJH, 2024 WL 4769772, at *4 (D. Ariz. Nov. 13, 2024) (denying temporary restraining order where delay in filing "implies a lack of urgency or irreparable harm").

**III.    The balance-of-the-equities and the public-interest factors favor the Board.**

Halting duly enacted laws, as Hoffmann Brothers requests, threatens serious harm to the public. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) ("[A]ny

14

time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). For over 90 years, the NLRA has empowered the NLRB to protect the "fundamental right" of employees to engage in union-related or other concerted activity "without restraint or coercion." NLRB v. *Jones & Laughlin Steel Corp.*, 301 U.S. at 33. The NLRA's procedures are the *sole* mechanism for employees to vindicate their Section 7 rights, *see Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265–66 (1940), making an injunction here particularly detrimental to the public interest.

Hoffmann Brothers argues that the government can suffer no harm if the processes to be enjoined are unlawful, and that the public has no interest in the continuance of unlawful actions. *See* Mot. at 13–14. This callback to its merits position impermissibly "collapses the four [preliminary injunction] factors into one." *Del. State Sportsmen's Ass'n. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). In any event, as previously discussed (*see* above at 8), the scheduled administrative proceedings are lawful because all relevant agency officials were properly appointed and are not occupying a position contrary to the actions and expressed desires of their appointing officials.

Finally, Hoffmann Brothers minimizes the delay it seeks, suggesting that "if the constitutional defects can ultimately be remedied, [the NLRB] could then proceed with the [h]earing" at some unspecified later time. Mot. at 14. But this downplays the disruptive effect even a brief TRO would have. There is no guarantee that the assigned ALJ or the NLRB attorneys litigating the ULP case will be immediately available whenever a TRO would expire. Moreover, Hoffmann Brothers' position ignores that "[t]here is always a public interest in prompt execution" of the laws. *Nken*, 556 U.S. at 436.

15

        Respectfully submitted,

        NATIONAL LABOR RELATIONS BOARD
        *Contempt, Compliance, & Special Litigation Branch*

        Kevin P. Flanagan
        *Deputy Assistant General Counsel*

        Padraic J. Lehane
        *Attorney*
        NATIONAL LABOR RELATIONS BOARD
        1015 Half Street S.E., Fourth Floor
        Washington, D.C. 20570
        (202) 273-4400
        Email: Paddy.Lehane@nlrb.gov
        321251(PA)

        <u>/s/ Craig Ewasiuk</u>
        Craig Ewasiuk
        *Attorney*
        NATIONAL LABOR RELATIONS BOARD
        1015 Half Street S.E., Fourth Floor
        Washington, D.C. 20570
        (202) 840-7258
        Email: Craig.Ewasiuk@nlrb.gov
        1044296(DC)

Dated: September 16, 2025